1

2

3

4  Peter Strojnik, 6464
   THE LAW FIRM OF PETER STROJNIK
5  3030 North Central Avenue, Suite 1401
   Phoenix, Arizona 85012
6  Telephone: 602-297-3019
   Facsimile: 602-297-3176
7  E-mail: Strojnik@aol.com
   Attorney for Plaintiff

8

9                 IN THE UNITED STATES DISTRICT COURT

10                  FOR THE DISTRICT OF ARIZONA

11

12  ARIZONA PRECIOUS METALS, INC., a)
    Nevada Corporation,                    )
13                         Plaintiff,)  NO.  CV-07-707-PHX-MHB
                                       )
14       vs.                           )   **PLAINTIFF'S BRIEF ON ISSUES**
                                       )   **REFERENCED IN THE 10-31-07 AND 11-02-**
15  ACCEPT    ERSTE    ROHSTOFF )             **07 ORDERS**
16  BETEILIGUNGS    KG,    a    German )
    Partnership;  KARL-HEINZ  RAUBALL )
17  and  JANE  DOE  RAUBALL,  his  wife; )
    BERNHARD  PUTTKE  and  JANE  DOE )
18  PUTTKE,  his  wife;  KURT  SCHALLER )
    and JANE DOE SCHALLER, his wife,   )
19                                     )
20                         Defendants. )
    _____)

21

22  ////

23  ////

24  ////

25

Pursuant to the Orders of the Court dated 10-31-07 and 11-02-07, Plaintiff submits the following brief.

**(1) Brief the Court on whether Defendants were properly served, citing the appropriate procedure for serving German defendants and providing proof that this procedure has been satisfied.**

Rule 4(f) of the Federal Rules of Civil Procedure governs service on individuals in a foreign country. Service on a corporation of a foreign country that has not waived proper service may be effected "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R.Civ.P. 4. The Hague Convention is a multilateral treaty signed by both the United States and Germany that provides "a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schtunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988); see Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163, reprinted at 28 U.S.C. Federal Rules of Civil Procedure, Rule 4.

Pursuant to Article 21 of the Hague Convention, each signatory nation may retain or reject certain general provisions and enact specific requirements for valid service within that country. See 28 U.S.C. Federal Rules of Civil Procedure, Rule 4, art. 21. Articles 2 and 3 of the Hague Convention require signatory countries to designate a Central Authority to receive requests for service, and require that a request for service of judicial documents and the documents to be served be forwarded to the Central Authority. See id.  Although Article 10 of

-2-

the Hague Convention contemplates service by mail, Germany has specifically rejected the validity of this mode of service. See id. n. 7a (setting forth specifics of service of process in the Federal Republic of Germany). Article 5 allows the signatory State to require that the document to be served be translated into the official language of the State. See id. art. 5. Germany is one of the countries that has such a requirement. See id. n. 7a.

Defendants Accept, Rauball and Puttke were served[1] as follows:

For each Defendant individually, Plaintiff submitted the service of process packet to the Clerk of the United States District Court for the District of Arizona, properly packaged in mailing envelopes, along with a blank check to cover the mailing costs. Each packet consisted of two copies of: (1) Request for Service Abroad for Judicial or Extrajudicial Documents; and (2) Summons – English Version; (3) Summons – German Translation; and (4) Complaint – English Translation; and (5) Complaint – German Translation. The service of process packets relevant to the Berlin Defendants (Accept, Rauball and Puttke) were addressed to the Berlin Central Authority, to wit: Senator Fuer Justiz, Salsburger Strasse 21-25, 10825, Berlin, Germany. *See* Exhibits 2 to Applications for the Entry of Default, DOCS 11, 13, 15. Thereafter, the Clerk of the Court hand carried the service of process packets to a US Post Office and paid for the mailing with Plaintiff's counsel's blank check.

The Requests for Service Abroad for Judicial or Extrajudicial Documents look like this:

---

[1] German Central Authority could not sever Defendant Schaller; therefore, Judgment is *not* sought against him.

**REQUEST FOR SERVICE ABROAD**
**OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters, signed at The Hague, the 15th of November 1965

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| Arizona Precious Metals Inc. c/o Peter Strojnik, ESQ 3030 N. Central Avenue Suite 1401 Phoenix, Arizona 85012 United States of America | Central Authority for the Federal Republic of Germany Senator fuer Justiz Salzburger Strasse 21-25 10825 Berlin |

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.

Bernhard Puttke
Accept Erste Rohstoff Beteiligungs KG
Heerstr. 24-26, D-14052 Berlin, Germany

[✓] (a)  in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention.*

[ ] (b)  In accordance with the following particular method (sub-paragraph (b) of the first paragraph of Article 5):*

[ ] (c)  by delivery to the addressee, if the addressee accepts it voluntarily (second paragraph of Article 5).*

The authority is requested to return or to have returned to the applicant a copy of the documents –and of the annexes** – with a certificate as provided on the next page.

List of documents
(1) Summons (English); (2) Summons (German Translation); (3) Verified Complaint (English); (4) Verified Complaint (German Translation)

    Upon receipt of the service of process packages from the Clerk of the Court, Senator

fuer Justiz in Berlin served process upon Defendants Rauball, Puttke and Accept and submitted

proof of service in the form of Certificates (Attestations). *See* Exhibits 3 to Applications for the

Entry of Default, DOCS 11, 13, 15.  Senator's Certificates look like this:

**CERTIFICATE**
**ATTESTATION**

Unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,
The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

dass der Antrag erledigt worden ist *)
that the document has been served *)
que la demande a été exécutée *)

— am ( Datum ) 10.05.2007.......................................................................
the (date )

— In (Ort, Straße, Nummer ) Heerstraße 24-26, 14052 Berlin...........................
at ( place, street, number)
à (localité, rue, numéro )..........................................................................

Service on Rauball and Puttke was completed on May 10, 2007 and on Accept, on May 18, 2007. *See* Applications for the Entry of Default, DOCS 11, 13, 15.   The originals of the Service Documents were deposited with the Clerk of the Court for safekeeping.

The Clerk of the Court waited 90 days and, on August 20, 2007, the Clerk of the Court issued defaults against Accept, Rauball and Puttke. The service of process on Accept, Rauball and Puttke was thereby completed.

**(2) Brief the Court on whether it has subject matter and personal jurisdiction, providing the applicable law and applying the facts to the law.**

This Court has original jurisdiction over this matter by virtue of (1) a controversy exceeding $75,000.00 and (2) diversity of citizenship between Plaintiff and Defendants who are citizens of Arizona and of Germany, respectively. (28 U.S.C. § 1331(A)(2))

The "purposeful availament" prong of the personal jurisdiction test in the 9th Circuit employs a three part query:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).   Here, Defendants purposefully directed their activities and consummated the transactions which form the basis of the Verified Complaint in the State of Arizona:  The loan was to be funded to an Arizona entity; the loan proceeds were to be used for funding an Arizona mine (The Silver King Mine); the loan was to be repaid from the proceeds of an Arizona business (APM-SKM Joint Venture) by an entity conducting business in Arizona (Arizona Previous Metals). Individual Defendants entered into Stock Option Agreements[2] in Arizona for stock in a Company conducting business in Arizona (APM).   The claims in the Verified Complaint arise out of the very set of operative facts that show Defendant's "purposeful availement".  The exercise of jurisdiction over the Defendants in Arizona is fair as the Defendants were fully expectant to be hailed to court in the State of Arizona by virtue of their engagement in business in this State, and by the following term in the Loan Agreement[3]:

> b) Construction. This Loan Agreement shall be construed in accordance with the laws of the State of Arizona. Jurisdiction to resolve any dispute arising hereunder shall be proper only in the Federal District Court For The District Of Arizona, if such Court has subject matter jurisdiction, and otherwise in the courts of competent jurisdiction located in Maricopa County, Arizona. All Contracting Parties hereby consent to the personal jurisdiction of such Courts and waive any claim of lack of personal jurisdiction or venue in any suit brought hereunder by any other Contracting Party in such Courts.

---

[2] *See*  Exhibit 1 (Rauball Stock Option Agreement); Exhibit 2 (Puttke Stock Option Agreement); and Exhibit 3 (Schaller Stock Option Agreement).

[3] The APM – Accept Loan Agreement is appended to the Declaration of Dr. Johannes Herman Hüning under the Penalty of Perjury (Exhibit 1 to Plaintiff's Motion for Judgment by Default, DOC 19).

**(3) Brief the Court on whether each separate Defendant entered into a contract with Plaintiff, providing evidence of the formation of the contracts and the terms of the contracts.**

Defendants may be divided into two groups: The partnership defendant (Accept) and the individual defendants (Rauball, Schaller and Puttke). Plaintiff brought a cause of action against Accept for breach of express written contract (Count 1) and for fraud in the inducement (Count 4). Plaintiff brought causes of action against individual defendants on the theories of:

- Breach of express oral contract (i) to find financing or, alternatively (ii) to fund the loan individually and (iii) the implied covenant of good faith and fair dealing (Count 2); and

- Vicarious liability under the theory of *alter ego* ( Count 3); and

- Fraud in the inducement (Count 4)

The liability of individual defendants predicated on express breach of oral contract is based on the following allegations of the Verified Complaint:

> 8. The Loan Agreement was arranged through Messrs. Schaller, Rauball and Puttke. **Messrs. Schaller, Rauball and Puttke independently promised to make the loan, and in exchange for this promise they received the following contingent interests in APM: Karl-Heinz Rauball, 625,000 shares of APM stock; Bernhard Puttke, 625,000 shares of APM stock; Kurt Schaller, 1,250,000 shares of APM stock. In addition, Messrs. Schaller, Rauball and Puttke each received contingent stock options equal to 20% of their holding.** (emphasis supplied)

> 9. ...

> 10. Messrs'. Schaller's, Rauball's and Puttke's promise to arrange for the loan is in default.

> \*\*\*

> 21. Defendants Schaller, Rauball and Puttke breached their agreement to find loan funding for Plaintiff.

–7–

22. Defendants Schaller, Rauball and Puttke breached the implied warranty of good faith and fair dealing implied in every contract.

*Accord* Hüning Declaration (Exhibit 1 to Motion for Judgment by Default, DOC 19):

11. The Loan Agreement was arranged through Messrs. Schaller, Rauball and Puttke. In exchange for the execution of the Loan Agreement by Accept, Messrs. Schaller, Rauball and Puttke received the following contingent interests in APM: Karl-Heinz Rauball, 625,000 shares of APM stock; Bernhard Puttke, 625,000 shares of APM stock; Kurt Schaller, 1,250,000 shares of APM stock. In addition, Messrs. Schaller, Rauball and Puttke each received contingent stock options equal to 20% of their contingent holding; and

12. Declarant has learned through telephonic and in-person conversations with Messrs. Schaller, Rauball and Puttke that Accept was a newly formed German Limited Partnership organized, in part, to make the loan to APM; and

13. Messrs. Schaller, Rauball and Puttke made independent promises to fund the $2M loan; and

As proof of consideration received by individual defendants, Plaintiff attaches Exhibit 1 (Rauball Stock Option Agreement), Exhibit 2 (Puttke Stock Option Agreement) and Exhibit 3 (Schaller Stock Option Agreement).

**(4) Brief the Court on which contract provisions each separate Defendant breached and how each separate Defendant breached those provisions.**

The contract provisions are set forth in the previous segment. The Defendants breached the contracts by failing to fund the loan they agreed to fund, as set forth in the Verified Complaint and the Hüning Declaration.

**(5) Brief the Court on whether the individual Defendants may be held liable for the obligations of the corporate Defendant, providing the applicable law and applying the facts to the law.**

The claims against individual Defendants include three separate causes of action: (1) Direct liability for breach of express contract (i) to find loan funding for the Silver King Mine

-8-

or, alternatively, to fund the loan themselves; (2) vicarious liability under the theory of *alter ego*; and (3) direct liability for fraud in the inducement. This section deals with the question of vicarious liability only.

The first question is whether Arizona or German law applies to the question of *alter ego*. The APM – Accept Loan agreement provides that Arizona law would govern the relationship of the parties:

> b)  <u>Construction.</u> This Loan Agreement shall be construed in accordance with the laws of the State of Arizona. Jurisdiction to resolve any dispute arising hereunder shall be proper only in the Federal District Court For The District Of Arizona, if such Court has subject matter jurisdiction, and otherwise in the courts of competent jurisdiction located in Maricopa County, Arizona. All Contracting Parties hereby consent to the personal jurisdiction of such Courts and waive any claim of lack of personal jurisdiction or venue in any suit brought hereunder by any other Contracting Party in such Courts.

In Arizona, the Courts allow the parties to make their own choice of law election, provided that such election of law is consistent with the Restatement. *Swanson v. Image Bank, Inc.,* 206 Ariz. 264, 77 P.3d 439 (2003) Restatement § 187 outlines the test used to decide whether the parties' chosen law will govern:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which,

under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In the matter at hand, the parties agreed that the law of Arizona would apply. The application of Restatement ¶ 187 affirms the propriety of the parties' election. Pursuant to Arizona law, Plaintiff may pierce a corporate (or partnership) defendant's corporate veil if there is (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice. *Gatecliff v. Great Republic Life Insurance Co.*, 170 Ariz. 34, 821 P.2d 725, (1991) (quoting from *Dietel v. Day*, 16 Ariz. App. 206, 208, 492 P.2d 455, 457 (1972) (*citing Employer's Liability Assurance Corp. v. Lunt*, 82 Ariz. 320, 323, 313 P.2d 393, 395 (1957)). The allegations in the Verified Complaint[4] and the Hüning Declaration support the piercing of Accept's corporate veil.

Even if German law were to apply, Defendants Rauball and Puttke would remain liable to Plaintiff. Employing the usual method of proving foreign law, *See  Dulles v. Katamoto,* 256 F.2d 545 (9th Cir. 1958) (the usual method of proof of foreign law is by testimony of an attorney in the jurisdiction), we turn to Exhibit 4, Supplemental Declaration of Dr. Hüning.

Dr. Hüning, as a German attorney, is qualified to testify to German law. Dr. Hüning confirms that pursuant to German Law, a partner is liable for the acts of the partnership where

---

[4] **COUNT THREE**
(Alter Ego – Schaller, Rauball and Puttke)

25. Plaintiff realleges all allegations heretofore set forth as if fully restated herein.
26. Accept is the *alter ego* or a business conduit of Schaller, Rauball and Puttke.
27. To observe the corporate or other separateness of Accept from Schaller, Rauball and Puttke would work an injustice.
28. There is a unity of interest between Accept and Schaller, Rauball and Puttke.
29. The separate personalities of Accept and Schaller, Rauball and Puttke have ceased to exist.

such acts are of a criminal nature, and the partner is aware of criminal act of the partnership. *See* §§ 823 and 249 (BGB [ civil code].   Pursuant to German law, a contract entered into without the present ability to perform is a criminal act. *See* §263 StGB [criminal code]) Since in this matter Accept entered into the Loan Agreement with APM without the ability to perform *see* Verified Complaint and Declaration of Dr. Hüning, the execution of the APM – Accept Loan Agreement was a criminal act pursuant to German law, rendering individual partners individually liable.

**(6) Brief the Court on the type of damages Plaintiff is entitled for Defendants' breach of contract, providing the applicable law and applying the facts to the law.**

A.  Contract Damages for Breach of Agreement to Make a Loan:

Generally, the damage for breach of contract to lend money is the difference between the contracted for interest rate and the interest rate at the time of breach. *United Cal. Bank v. Prudential Ins. Co.,* 140 Ariz. 238, 295-296, 681 P.2d 390, 447-448 (App.1983). However, a well-established exception to this general rule allows for special, or consequential, damages if the defendant knew of or could foresee the use of the loan money. *Higgins v. Arizona Savings & Loan Ass'n*, 90 Ariz. 55, 64, 365 P.2d 476, 482-483 (1961) (citing *Hadley v. Baxendale*, 9 Exch. (Eng.) 341, 354) ("[I]f the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated.").

In the case at hand, Defendants were fully aware of the uses of the loan money.    Loan Agreement specifically anticipated that the loan proceeds would be used, in part, for the Silver King Mine:

> **3) LOAN AND FUNDING:**
>
> a) <u>Promise To Make A Loan</u>: Accept hereby promises, covenants and agrees to make a Loan to APM in the amount of TWO MILLION US DOLLARS ($2,000,000.00), funded and payable in Loan installment payments as follows:
>
>   i) $300,000 allocated to the Silver King Mine Project on or before August 31, 2006;
>
>   ii) $200,000 allocated to the Silver King Mine Project on or before September 30, 2006;

Accordingly, Defendants are liable for special damages.

B. Damages for Fraudulent Inducement:

The measure of damages for fraud in the inducement and for breach of contract are the same. *Mister Donut of America Inc. v. Harris*, 150 Ariz. 347, 723 P.2d 696 (App.1985)

C.  Punitive Damages:

Punitive Damages are awarded primarily to punish the wrongdoer and deter others from similar conduct. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). The award of punitive damages is limited to situations where these objectives can be furthered. *Gurule v. Illinois Mutual Life and Casualty Co.,* 152 Ariz. 600, 601, 734 P.2d 85, 86 (1987). Punitive damages are therefore awarded only where the defendant's wrongful conduct is the result of an "evil mind," something more than the mere commission of a tort. *Linthicum*, 150 Ariz. at 330, 723 P.2d at 679. Accordingly, the primary inquiry is based on the wrongdoer's state of mind or attitude. Id. An evil mind is found where the defendant intended to injure the plaintiff, or where the defendant, not intending to cause injury, "consciously pursued a course

-12-

of conduct knowing that it created a substantial risk of significant harm to others." *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). An evil mind can be inferred when the defendant's conduct is so outrageous or egregious that it can be assumed he intended to injure or that he consciously disregarded the substantial risk of harm created by his conduct. Gurule, 152 Ariz. at 602, 734 P.2d at 87; Rawlings, 151 Ariz. at 162-63, 726 P.2d at 578-79. Punitive damages are awardable in vicarious liability cases. *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120 (App.1995)

In the case at hand, the Defendants made specific promises to provide a specific amount of funding on a loan at a time when they did not have the capacity to make the funding. Hüning Declaration at ¶17-21, and 27 clarifies:

17. Following Messrs. Schaller's, Rauball's and Puttke's independent promise to arrange and fund the loan, Declarant held numerous conversations with Messrs. Schaller, Rauball and Puttke regarding the funding of the loan; and

18. Declarant's conversations with Messrs. Schaller, Rauball and Puttke occurred by telephone and in person; and

19. Declarant traveled to Germany on several occasions to discuss the status of the loan with Messrs. Schaller, Rauball and Puttke; and

20. During telephonic and in-person conversations with Messrs. Schaller, Rauball and Puttke, Declarant learned that the promises to make the loan on or about September 5, 2006, were made knowingly that the loan could not be made by Defendants; and

21. Declarant also learned during telephonic and in-person conversations with Messrs. Schaller, Rauball and Puttke that at the time Messrs. Schaller, Rauball and Puttke made the promise to make the loan on or about September 5, 2006, Messrs. Schaller, Rauball and Puttke knew that they did not have the means to make the loan; and

\*\*\*

27. Defendants induced APM to enter into the Loan Agreement having no ability or intent to perform thereunder; and

-13-

As indicated earlier in this Brief, the actions of all defendants are criminal acts pursuant to the German Criminal Code.  The amount of punitive damages is supported by the Hüning Declaration in Paragraph 29:

> 29. During telephonic and in-person conversations with Defendants Messrs. Schaller, Rauball and Puttke, Declarant has learned that Messrs. Schaller, Rauball and Puttke each or as a group hold significant assets and holdings in Germany and across the globe, as follows:
>
>   a. Interest in up to 1% commission for the sale of 30 Airbus 300 Series airplanes to the Republic of Congo and other countries and/or their airlines valued at $1.8 billion; and
>
>   b. Mining interests in Indonesia valued at several million US Dollars; and
>
>   c. Three oils concessions and several mining claims for diamonds and precious metals in the Republic of Congo valued at several million US Dollars.

**(7) Provide the Court with specific and concrete evidence of the amount of damages Plaintiff is entitled.**

It is well established in Arizona that a recovery for lost profits is appropriate even in a newly formed organization "if the evidence establishes a reasonably certain factual basis for computing probable losses". *Short v. Riley*, 150 Ariz. 585 724 P.2d 1252, 1254 (App. 1986) Where it can be proven that profits were lost, "doubts as to the extent of the injury should be resolved in favor of the innocent plaintiff and against the wrongdoer." *Gilmore v. Cohen*, 95 Ariz. 34, 36, 386 P.2d 81, 82 (1963).

In the matter at hand, Dr. Hüning's Declaration (Exhibit 1 to DOC 19) states with certainty:

| Silver King Mine Joint Venture Income Projections* | | | | |
|---|---|---|---|---|
| **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
| Gross income     15,120,000 | 14,000,000 | 15,000,000 | 15,600,000 | 16,200,000 |
| Gross profit/ | | | | |
| EBITDA        11,092,350 | 9,726,542 | 10,464,269 | 10,861,783 | 11,254,032 |
| 60% EBIT to APM 6,637,182 | 5,815,874 | 6,256,506 | 6,492,808 | 6,725,731 |
| 40% EBIT to SKM 4,424,788 | 3,877,250 | 4,171,004 | 4,328,539 | 4,483,821 |
| NPV Factor          0.83 | 0.69 | 0.58 | 0.48 | 0.40 |
| **APM**        (npv) **5,508,861** | **4,012,953** | **3,628,773** | **3,116,547** | **2,690,292** |
| **SKM**        (npv) 3,672,574 | 2,675,302 | 2,419,182 | 2,077,698 | 1,793,528 |
| **Year 6** | **Year 7** | **Year 8** | **Year 9** | **Year 10** |
| Gross income     16,200,000 | 16,200,000 | 16,200,000 | 16,200,000 | 16,200,000 |
| Gross profit/ | | | | |
| EBITDA        11,254,032 | 11,254,032 | 11,254,032 | 11,254,032 | 11,254,032 |
| 60% EBIT to APM 6,725,731 | 6,725,731 | 6,725,731 | 6,725,731 | 6,725,731 |
| 40% EBIT to SKM 4,483,821 | 4,483,821 | 4,483,821 | 4,483,821 | 4,483,821 |
| NPV Factor          0.33 | 0.28 | 0.23 | 0.19 | 0.16 |
| **APM**        (npv) **2,219,491** | **1,883,204** | **1,546,918** | **1,277,888** | **1,076,116** |
| **SKM**        (npv) 1,479,660 | 1,255,469 | 1,031,278 | 851,925 | 717,411 |

\* The Discount rate for a private business is calculated at 20% in accordance with "How To Value Your Business and Increase its Potential" Author Jay B., Abrams, page 82. ISBN: 0-07-139520-2

26. Reducing the loss of income and profits to present value yields the present value of damages in the amount of US$ 26,961,043.

27. Defendants induced APM to enter into the Loan Agreement having no ability or intent to perform thereunder; and

In addition, Dr. Hüning Supplemental Declaration, Exhibit 4 hereto, and the Declaration of Richard Campbell, Exhibit 5 hereto, provide additional bases for the damages, including a statement of basis of computation of damages, and the inclusion of documentation and work papers which lead to the computation of damages:

1. The 2006 Silver King Mine Executive Summary (Attachment A to Supplemental Declaration); and

a. The April 21, 2004, Ore Body Report by Silver King Mine (Attachment B to Supplemental Declaration); and

b. The Silver King Production and Mining Potential (Attachment C to Supplemental Declaration); and

     c.  Net Present Value Of The Silver King Mine Joint Venture (Attachment D to Supplemental Declaration); and

     d.  Silver King Mine 10 Year Income Statement Summary (Attachment E to Supplemental Declaration).

The Declaration of Dr. Hüning previously filed with the Court, along with the Supplemental Declaration of Dr. Hüning and the Declaration of Richard Campbell appended hereto as Exhibits 4 and 5, respectively, yield the damage total of $26,961,043.00. This amount represents losses over a 10 year period discounted to present value.

**(8) May the Court award damages in an amount greater than $75,000 if $75,000 is the largest amount of damages specifically alleged in the Complaint. See Fed. R. Civ. P. 54(c); *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1024–26 (11th Cir. 1982).**

**A.** *9th Circuit Law Relating to Relationship between Federal Rules 55(b) and 54(c): Henry v. Sneiders, 490 F.2nd 315 (9th Cir. 1974)*

Rule 54(c) provides:

A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

The 9th Circuit court of Appeals has held that a prayer for relief seeking damages to be "proven at the time of trial" supports a default judgment in excess of the *specific* amounts actually prayed for in the Complaint. *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974), cert. denied *Sneiders v. Henry*, 419 U.S. 1060 (1974). In *Henry*, the prayer for relief stated as follows:

"By reason of breach of the contract, misrepresentation, and fraud of the Defendants, Plaintiff has suffered a direct loss of the purchase price in the amount of $71,243.68, together with additional amounts not yet fully determined for appraisal examination costs, loss of the value of the stamps as represented, legal

expenses and attorneys' fees, embarrassment, anxiety, and loss of health, the full amounts of which Plaintiff will prove at the time of trial. . . . "WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them, and the marital community composed of them, in the sum of $71,243.68 damages for funds fraudulently procured, and for Plaintiff's other damages as are proved at the time of trial, together with interest and costs."

*Id.* The court explained, 490 F.2d at 317:

The appellant also argues that the default judgment for $235,338.89 exceeded the $71,243.68 prayed for in the complaint. That part of the prayer, however, was for the amount that the plaintiff had paid to the defendants. In addition, plaintiff prayed for additional damages for breach of contract, the amount of which was to be proved at trial. The prayer was not limited to $71,243.68, and the default judgment did not exceed the amount prayed for. (footnote omitted)

Accord, *Board of Trustees of IBEW Local Union No. 100 Pension Trust Fund v. Elijah Electric, Inc.*, No. CV F 06 1860 AWI WMW P (E.D.Cal. 07/27/2007) (seeking damages "in an amount to be proven at trial"); *Gucci America v. Gold Center Jewelry*, 997 F. Supp. 399, 405 (S.D.N.Y.), rev'd on other grounds, 158 F.3d 631 (2d Cir. 1998). ("[a]s long as the defaulting party receives adequate notice of the relief sought and is afforded a meaningful opportunity to oppose it, the purpose of Rule 54(c) is served."); *D'Orange v. Feely*, where the plaintiff sought relief in an amount in excess of $120,000 and the court saw fit to grant the plaintiff $1,361,583, many more times the amount requested. 894 F. Supp. 159, 163 (S.D.N.Y. 1995), aff'd, 101 F.3d 1393, 1996 WL 446254 (2d Cir. 1996); *Xuncax v. Gramajo*, 886 F. Supp. 162, 184 (Mass. 1995) where victim of torture requested damages "in excess of $1,000,000" court awarded her $3,000,000. *See also Merrifield v. Miner's Inn Restaurant & Lounge*, No. 1:05-CV-1344-OWW-SMS (E.D.Cal. 09/21/2006); *Dittmar v. Thunderbird Collection Specialists, Inc.*, No. CV 06-1925-PHX- SMM (D.Ariz. 2007)

**B.** *Application of Henry to the Matter at Hand*

The Verified Complaint filed in this action mentions the amount of $75,000.00 only in the context of District Court's jurisdiction in ¶ 3 ("The amount of controversy exceeds $75,000.00"). All substantive allegations of damages refer to and pray for "loss of business, loss of profits, and loss of income" damages "in an amount to be proven at trial"[5]. Therefore, under the specific ruling in *Henry*, Plaintiff is entitled to damages proven after the entry of default.

**C.** *Fehlhaber v. Fehlhaber*

*Fehlhaber* is a divorce case. The husband (Fred) filed a divorce proceeding in Florida and the wife (Verone) filed a separate divorce proceeding in California. In the California proceeding, Wife prayed broadly that "property rights be determined as provided by law" and that the court "render such judgments ... as are appropriate". Elsewhere in the Complaint, Verone alleged that the value of the marital estate was "in excess of $15,000,000.00." Fred did not make an appearance in the California court, and the California Court entered two separate judgments against him (1) to pay alimony of $8,500.00 per month and attorneys fees of

---

[5] *See e.g.* ¶ 14 ("As a direct and proximate result of the actions of Defendants, APM has suffered significant **direct and consequential damages, including without limitation lost profits, loss of revenue, and other general damages occasioned by Defendant's breach.**"); ¶18 ("Plaintiff is entitled to **general and special damages, including the loss of business, loss of profits, and loss of income.**"); ¶19 ("WHEREFORE, Plaintiff prays for Judgment against Accept as follows: (A) For general and special damages as specified above **in an amount to be proven at trial**"); ¶23 ("Plaintiff [is entitled] is to general and special damages, including the loss of business, loss of profits, and loss of income."); ¶24 (WHEREFORE, Plaintiff prays for Judgment against Schaller, Raubell and Puttke as follows: (A) For general and special damages as specified above **in an amount to be proven at trial.**"); ¶29 ("WHEREFORE, Plaintiff prays for Judgment declaring that Schaller, Raubell and Puttke are the alter egos of Accept, and further: (A)For general and special damages as specified above **in an amount to be proven at trial**"); ¶33 ("Plaintiff has been damaged as a result of the Defendant's [sic] fraud in the inducement in an amount to be proven at trial."); ¶34 ("WHEREFORE, Plaintiff prays for Judgment against Defendants as follows: (A) For general and special damages as specified above **in an amount to be proven at trial**"); ¶36 ("WHEREFORE, Plaintiff prays for Judgment against Defendants as follows: (A) For an award of punitive damages sufficient to punish these Defendants and to deter others from engaging in similar misconduct.") (All emphasis supplied)

-18-

$45,000; and (2) for money judgment in the amount of $9,997,355.57 as property division equalization payment[6].

Based on diversity of citizenship, Verone brought the enforcement proceedings against Fred in the US District court in Florida. Fred challenged the constitutionality of the California Judgment on the basis that the judgment granted damages greater than those prayed for in Verone's complaint. The 11th Circuit noted that California law, as Federal law, provides that a default judgment "cannot exceed that which ... (was) demanded in (the) complaint." *See* Cal.Code Civ.Pro. § 580[7].    However, unlike Federal law, "California Supreme Court has interpreted § 580 to require that unless a ***specific sum*** is ***actually*** contained in the complaint, a monetary default judgment is subject to collateral attack." (emphasis supplied), citing to *Becker v. S.P.V. Construction Co., Inc.,* 27 Cal.3d 489, 493-94, 612 P.2d 915, 917, 165 Cal.Rptr. 825, 827 (1980). The Court further noted that pursuant to California law,  a failure to comply with the specificity requirement renders the judgment void and subject to collateral attack, citing to *Burtnett v. King*, 33 Cal.2d 805, 205 P.2d 657 (1949). On the basis of California Supreme court Decisions regarding the effect of Cal.Code Civ.Pro. § 580, the 11th Circuit Court of Appeals

---

[6] After Fred had been declared in default Verone submitted to Fred a request for admissions concerning the value of their marital estate subject to division under California's community property laws. Fred did not respond. Verone moved to have these unanswered requests taken as admitted. The trial court, acting through a judge pro tem, granted this motion and thus found the marital estate to be valued at $19,994,711.14. Rather than dividing the assets in kind or offsetting one asset for another, the court awarded all of the assets to Fred and granted Verone a cash judgment of one-half this amount as a cash offset in lieu of her entire share of the marital estate.

[7] 580. (a) The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. The court may impose liability, regardless of whether the theory upon which liability is sought to be imposed involves legal or equitable principles.

concluded that it could not grant the California Judgment full faith and credit for the amount of $9,997,355.57[8].

*Fehlhaber* is not applicable to the matter at hand for two distinct reasons:  First, it is based on the California Supreme Court decision of *Becker v. S.P.V. Construction Co., Inc.* construing California law Cal.Code Civ.Pro. § 580 and does not provide citable precedent relative to Federal Rule 54(c). Second, in the 9th Circuit we have a specific precedent (*Henry*) holding that prayer for "damages as are proved at the time of trial" satisfies the requirement of specificity in Rule 54(c).

### CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons Plaintiff respectfully request that the Court enter Judgment as submitted.

RESPECTFULLY submitted this 9th day of November, 2007.

Peter Strojnik
Attorney for Plaintiff

The foregoing e-filed this 9th day of November, 2007.

_____

[8] Ultimately, the 11th Circuit Court of Appeals in *Fehlhaber* granted Verone's California Judgment full faith and credit for the amount of $7,5M representing ½ of the $15M specifically prayed for in her California complaint.

-20-