IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Precious Metals, Inc., | No. CV-07-707-PHX-MHB |
| Plaintiff, | **OPINION** |
| vs. | |
| Accept Erste Rohstoff Beteiligungs KG; et al., | |
| Defendants. | |

On April 5, 2007, Plaintiff Arizona Precious Metals ("APM") brought suit against Defendants for breach of contract and fraud in the inducement. The Clerk of the Court entered default against Defendants on August 20, 2007. Plaintiffs subsequently moved for default judgment. On May 2, 2008, the Court held a hearing for APM to prove its damages. The Court will grant in part and deny in part APM's request for default judgment, as set forth in the Judgment filed concurrently herewith. The Court's findings of fact and conclusions of law are set forth below.

**BACKGROUND**

The Silver King Mine was opened in the 1870s, but has not operated profitably since 1922. On August 22, 2006, APM and the Silver King Mining Company of Arizona ("SKM") entered a joint venture agreement ("Joint Venture Agreement"). Under such agreement, SKM would contribute its mining rights in the Silver King Mine, and APM would provide

up to $10 million, but no less than $2 million, in financing to commence production of the "Silver King Mine Project." APM was a 60% interest holder in the joint venture, and SKM was a 40% interest holder.

APM's promise to provide start-up capital for the Silver King Mine Project was based on a pending loan agreement ("Loan Agreement") with Defendant Accept Erste Rohstoff Beteiligungs KG ("Accept"), which was executed on September 5, 2006. Under the Loan Agreement, Accept would loan APM $2 million for various mining projects, including $500,000.00 for the Silver King Mine Project. The Loan Agreement enabled APM to reallocate loan proceeds to different projects in the exercise of good faith business judgment.[1] The Loan Agreement was arranged through Defendants Karl-Heinz Rauball and Bernhard Puttke, who independently promised to make the loan in exchange for stock interests in APM. At the time of the execution of the Loan Agreement, Defendants did not have the ability to fund the loan.

Despite their continued assurances to provide funding, Defendants defaulted on the loan agreement. APM made efforts to locate other investors, but was unable to obtain alternative financing. Because APM was unable to provide the financing required by the Joint Venture Agreement, it lost its interest in the mine in June 2007. APM claims $26,961,043.00 in lost profits and $5,000,000.00 in punitive damages.[2]

---

[1] APM does not seek damages for Defendants' failure to provide funding for the other mining projects, conceding that damages would have been too speculative since APM had not yet entered joint venture projects concerning those projects.

[2] At the May 2, 2008 hearing, the Court repeatedly encouraged APM to offer evidence regarding other measures of damages, including incidental damages. However, APM only offered evidence concerning alleged lost profits.

- 2 -

**JURISDICTION**

The Court has jurisdiction under 29 U.S.C. § 1332 (diversity jurisdiction): APM is a Nevada corporation with its principle place of business in Arizona; Defendants are citizens of Germany; and the amount in controversy exceeds $75,000.00.

**APPLICABLE LAW**

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003). Arizona substantive law applies to this diversity action.

**DISCUSSION**

**I.   Consequential Damages**

"Consequential damages are those reasonably foreseeable losses that flow from a breach of contract," including lost future profits. McAlister v. Citibank, 829 P.2d 1253, 1257 (Ariz. Ct. App. 1992). "The traditional measure of damages for breach of a contract to loan money is the additional interest required for a replacement loan."[3] United Cal. Bank v. Prudential Ins. Co. of Am., 681 P.2d 390, 447 (Ariz. Ct. App. 1983). This is due to the well-known principle that "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made." Restatement (Second) of Contracts § 351(1) (1979).[4] "Because credit is so widely available, a lender often has no reason to foresee at the time the contract is made that the borrower will be unable to make substitute arrangements in the event of breach." Id. § 351(1) cmt. e. However, a party may be able to recover consequential damages for breach of a contract to loan money where:

---

[3] APM concedes that the measure of damages for breach of contract and fraud in the inducement are the same.

[4] Absent controlling Arizona law the contrary, Arizona courts generally follow the Restatements. Powers v. Taser Int'l., Inc., 174 P.3d 777, 782 (Ariz. Ct. App. 2007).

- 3 -

> 'the specific purpose for which the loan was made was communicated to the lender at the time the contract was entered into, and where it further appears that the borrower has suffered special damages by the breach, which are pleaded and proved, the damages recoverable are such as may fairly and reasonably be supposed to have been in the contemplation of the parties at the time of making the contract, as the probable result of a breach of it.'

Higgins v. Arizona Sav. and Loan Ass'n, 365 P.2d 476, 482 (Ariz. 1961) (quoting Shurtleff v. Occidental Bldg. & Loan Ass'n, 181 N.W. 374, 375 (Neb. 1921)).

These principles were recently applied in Basic Capital Management. v. Dynex Commercial, Inc., — S.W.3d —, No. 05-04-01358-CV, 2008 WL 509385 (Tex. App. Feb. 22, 2008). In Basic Capital Management, a real estate lender breached an agreement to lend $160 million for real estate investment, and the jury awarded the real estate investor $256,233.00 in lost profits. Id. at *8. The trial court, however, granted the real estate lender's post-verdict motion and entered a take-nothing judgment. Id. The trial court's ruling was affirmed on appeal. Id. at *10. The appellate court explained:

> [I]n the event of a breach of contract to lend money, the borrower can recover consequential damages, i.e., expenses and lost profits, if the breaching lender knew, at the time it entered into the contract: (1) that the contracted financing was for a specific venture; and (2) that in the event of its breach the borrower probably would be unable to obtain other financing in a manner that would permit the borrower to carry out that venture.

Id. at *9. Although the real estate lender was aware of the specific purpose for which the loan was sought, there was no evidence that, at the time the parties entered the contract, the real estate lender was aware that the real estate investor would be unable to obtain alternative financing. Id. at *10.

Here, Defendants were aware of the specific purpose for which the loan was sought. However, like Basic Capital Management, APM has not offered credible evidence that, at the time it entered the Loan Agreement, Defendants were aware that no alternative financing would be available. Thus, the Court finds that APM's lost profits are not recoverable

1  because Defendants did not have reason to foresee when the contract was made that APM
2  would be unable to obtain alternative financing as a probable result of their breach.

3  Even if Defendants could have foreseen that alternative financing would be unavailable, APM has not proved by a preponderance of the evidence that it suffered lost profits. APM's claim that the present value of its 60% share of the net profits over the next ten years in the Silver King Mine would be $26,961,043.00 is nothing more than a hopeful anticipation. The Silver King Mine has not operated profitably since 1922. Instead of relying on the past performance of the mine, APM bases its claim of lost profit on inherently unreliable marketing material and projections not supported with any or sufficient foundation. In addition, the lost profit calculations are based on $10 million in start up capital, not the lesser amount Defendants were obligated to fund. APM's claim to lost profits is entirely speculative. Thus, the Court finds that APM did not suffer lost profits.[5]

## II.  Punitive Damages

"Punitive damages are not usually awarded in contract actions, unless there is an accompanying tort." Miscione v. Bishop, 130 Ariz. 371, 374–375 (App. 1981); see also Restatement (Second) Contract § 355 (1981) ("Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable."). APM has brought the tort claim of fraud in the inducement.

---

[5] The Court also notes that, under the Joint Venture Agreement, APM was obligated to provide at least $2 million in financing for the Silver King Mine Project. However, under the Loan Agreement, Defendants were only obligated to loan APM $500,000.00 for the Silver King Mine Project. Although the Loan Agreement enabled APM to reallocate loan proceeds to different projects in the exercise of good faith business judgment, APM offered no evidence that it would have allocated the entirety of the $2,000,000.00 loan to the Silver King Mine or that such an allocation would have been an exercise of good faith business judgment. Thus, even if Defendants had provided $500,000.00, APM would still have to come up with an additional $1.5 million for the Silver King Mine Project. APM has offered no evidence that it was able to provide the additional $1.5 million it was obligated to fund under the Joint Venture Agreement.

In Arizona, "[t]o recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an 'evil mind.'" Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn, 907 P.2d 506, 518 (Ariz. Ct. App. 1995) (quoting Thompson v. Better-Bilt Aluminum Prod. Co., 832 P.2d 203, 209 (Ariz. 1992)). "A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, 'consciously disregarding the unjustifiable substantial risk of significant harm to them.'" Id. (quoting Linthicum v. Nationwide Life Ins. Co., 723 P.2d 675, 680 (Ariz. 1986). When evaluating conduct regarding an evil mind, a court considers: "(1) the reprehensibility of defendant's conduct and the severity of the harm likely to result, (2) any harm that has occurred, (3) the duration of the misconduct, (4) the defendant's awareness of the harm or risk of harm, and (5) any concealment of it." Hyatt Regency, 907 P.2d at 518. In addition, "the conduct giving rise to punitive damages must be a proximate cause of the harm inflicted." Saucedo ex rel. Sinaloa v. Salvation Army, 24 P.3d 1274, 1279 (Ariz. App. Ct. 2001).

At the May 2, 2008 hearing, APM offered no evidence justifying an award of punitive damages. The only possible basis for awarding punitive damages is the allegation in the Complaint that, at the time of the execution of the Loan Agreement, Defendants did not have the ability to fund the loan. The Court finds this allegation, by itself, is insufficient to support an award of punitive damages.

## CONCLUSION

In conclusion, the Court finds that APM is not entitled to compensatory or punitive damages, but will be awarded nominal damages of one dollar. APM will also be awarded its costs and reasonable attorney's fees.

DATED this 2nd day of September, 2008.

- 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

_____
Roslyn O. Silver
United States District Judge